RICHARD LUDWIG, DBA LUDWIG SUPER
  MARKET,

*Plaintiff and Appellant,*

vs.

GEORGE B. HARSTON, State Commissioner of Agriculture, for the State of Wyoming,

*Defendant and Respondent.*

(No. 2398; August 31st, 1948; 197 Pac. (2d) 252)

138

For plaintiff and appellent the cause was submitted on the brief of Loomis and Lazear of Cheyenne, Wyoming and Mr. A. M. Gilbert of New York City and oral argument by Mr. Lazear and Mr. Gilbert.

For the defendant and respondent the cause was submitted on the brief of Norman B. Gray, Attorney General, John S. Miller, Deputy Attorney General and Marion R. Smyser, Assistant Attorney General all of Cheyenne, Wyoming and oral argument by Mr. Miller.

142

## OPINION

RINER, *Chief Justice.*

This direct appeal record is before us presenting the question whether the sales tax law on oleomargarine enacted by the Wyoming State Legislature in 1931 as Chapter 137, Laws of Wyoming for that year to take effect "from and after June 1, 1931" which has been

operative in this state since that date and which now appears as Sections 32-2701 to 32-2706 inclusive, W. C. S. 1945, is constitutional. The district court of Albany County decided an affirmative of the question and Richard Ludwig, doing business as "Ludwig Super Market", plaintiff in that court alleging error brings the record here as the appellant for review as stated above. He will be usually referred to hereinafter as the "plaintiff". The defendant and respondent, the State Commissioner of Agriculture, charged by Section 32-2704 with the duty of enforcing the provisions of the Act, will usually be referred to subsequently as the "defendant". At the time of the institution of the suit the occupant of that office was A. D. Faville but he having since died, his successor, George B. Harston was duly substituted in his stead. Oleomargarine will for brevity be mentioned as "margarine".

The case was tried in the district court aforesaid without a jury on October 17, 1947. The action was brought, as plaintiff's petition states under Chapter 3, Article 58, W. C. S., 1945, this being the Uniform Declaratory Judgment Act. The pleading last mentioned after alleging that plaintiff is a resident of the City of Laramie and a retail grocer there, sets forth verbatim Sections 32-2701, 32-2703, and 32-2704 W. C. S. 1945. Sections 32-2701, 32-2703 will, with part of section 32-2702, be hereinafter given in their statutory language. Section 32-2704, as stated above merely designates the Commissioner of Agriculture or his deputies as the proper officers to enforce provisions of the Act and further supplies authority to:

"issue from time to time such rules and regulations as he may deem necessary for the proper enforcement of this act."

The petition, having made the averments covering the matters just described, in its paragraph No. 5

alleges in substance that plaintiff as a retail grocer buys from wholesalers various brands of margarine and sells and offers them for sale; that under the provisions of Section 32-2703 supra, he must pay a sales tax of ten cents on each pound of vegetable margarine sold or offered for sale, being required to affix to each package of such margarine a ten cent stamp purchased from the Commissioner aforesaid; the remaining paragraphs of said pleading substantially allege as follows:

That all margarine must comply with the applicable provisions of the Federal Food, Drug and Cosmetic Act and the regulations thereunder; that Section 401 of that Act authorizes the Federal Security Administrator, as his judgment may dictate for the consumers' best interest, to promulgate definitions and standards of identity for foods under their usual names; that these definitions and standards have the force of law; that this official has heretofore promulgated a definition and standard of identity for margarine which is now in effect as to all margarine sold in Wyoming; that but one definition and standard of identity has been promulgated for margarine regardless of the kinds of fats or oils present in the product and all of it must be labeled "oleomargarine".

That in order to advise the consumer, the foregoing mentioned definition and standard of identification requires that immediately preceding or following the word "oleomargarine" there should be a statement as to the kinds of fats present in the product; that margarine made from vegetable and animal fats must be so labeled; that plaintiff buys and sells many different brands of margarine and their container cartons identify these brands by their trade names and other than the legal requirements mentioned above, the cartons do not in every case indicate whether more or less than twenty per cent of animal fat is present in

such margarine, since the exact percentage of fats in the margarine does not appear on said containers.

That there is no substantial difference between margarine containing less than twenty per cent of animal fat as defined in Section 32-2701 supra and other margarines sold by plaintiff which contain twenty per cent or more of any animal fat; that all margarines as manufactured and sold today regardless of whether they contain less or more than twenty per cent of animal fat are products substantially the same in all respects of any consequence, since margarine is a factory made product and the manufacturers thereof make their finished products contain such qualities as they desire regardless of whether twenty per cent more or less of animal fats or no animal fats whatsoever are used and all of such qualities are characteristic of all margarines; that plaintiff is required by said law of Wyoming to pay a tax of ten cents per pound on the margarine that he sells which contains less than twenty per cent of animal fat and no tax on that which contains twenty per cent or more of animal fat, regardless of the fact that both, as a food product are substantially the same in every material respect.

That plaintiff desires to sell all the margarine he is able to purchase from wholesalers without being taxed ten cents a pound on margarines designated by the Act as "vegetable margarine"; that plaintiff fears he will be subject to the penalties provided by the Section 32-2706 W. C. S. 1945 which prescribes a penalty for selling margarine in violation of the Act, if he sells or exposes for sale margarine which contains less than twenty per cent animal fat without paying the ten cents a pound tax and affixing the required stamp or stamps.

That the legislative attempt to classify margarine on the basis of whether there may or may not be pres-

ent twenty per cent of animal fat is wholly arbitrary, unreasonable and unconstitutional in that said classification attempts to distinguish between products which are substantially the same in every material respect.

That the aforesaid Act is unconstitutional and violates these provisions of Wyoming's constitution, to wit: Article 1, Section 6 providing that no person shall be deprived of his life, liberty, or property without due process of law; Article 1, Section 7 providing that absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority; Article 1, Section 28 providing that all taxation shall be equal and uniform; Article 1, Section 34 requiring all laws of a general nature to have a uniform operation, and Article 3, Section 27 which provides that the legislature shall not pass local or special laws in the matter of the assessment or collection of taxes.

The petition prayed that the Act aforesaid be declared unconstitutional and void insofar as it requires margarine dealers to pay a ten cents per pound tax on the product designated by the Act as vegetable margarine and to affix stamps on pound packages of such margarine; that defendant be enjoined from the collection of said tax and from the sale of stamps to margarine dealers.

The defendant's answer contained two defenses. The first one admitted the allegations in the paragraphs of the petition preceding paragraph 5 and denied all the allegations of said pleading not in said answer admitted.

The second defense of the answer was substantially as follows: That the Wyoming State Legislature in 1931 enacted Chapter 137 of the Session Laws of that year now appearing as Article 27 of Chapter 32, W.

C. S. 1945; that plaintiff's petition sets out correct copies of the sections of that law as recited therein; that the Wyoming Legislature classified in Section 32-2701 for taxation certain articles in defining "Vegetable Oleomargarine" as set out in that section and exempted certain other articles also as listed in said section; that vegetable margarine as defined in Section 32-2701 aforesaid does not posses the same characteristics as those commodities manufactured from substances and combinations thereof mentioned in said statute but containing more than twenty per cent of animal fat and less than one per cent of water; that vegetable margarine as defined in said statute and articles and compounds mentioned in the law but containing more than twenty per cent of animal fat and less than one per cent of water "constitute two different and distinct articles of food, possessing substantially different qualities and characteristics and susceptible of use for different purposes."

The remaining portions of the answer state in substance that the tax here involved is an excise tax lawfully imposed upon the sale of an article possessing known and definite qualities and characteristics which distinguish them from other articles not so taxed; that this tax operates equally upon all dealers in the articles within the classification of articles taxed and does not exempt any dealer from payment of the tax with respect to any article within said classification. It is then alleged also that the tax does not violate any of the several provisions of the constitution of Wyoming enumerated in plaintiff's petition and that the classification of these articles for taxation purposes is in all respects reasonable and based upon real and readily ascertainable differences in the composition of the articles taxed from those not taxed and differences in the uses to which such articles are capable of being put. Judgment was prayed that the court adjudge the

tax imposed by Article 27, Chapter 32, W. C. S. 1945 to be a valid tax; that also the law be declared to be a constitutional exercise of legislative power, and that plaintiff take nothing by his action.

There was no reply filed.

Judgment, after trial to the court as before indicated, was given in the district court for the defendant and against the plaintiff and that the "Oleomargarine Sales Tax law of the State of Wyoming, being Article 27 of Chapter 32, W. C. S. 1945" is constitutional.

Article 27 of Chapter 32 W. C. S. 1945 designated in that compilation of the statutes as the "Oleomargarine Sales Tax" law consists of six sections, Sections 32-2701 to 32-2706 inclusive. At the risk of some repetition we will shortly review these sections giving verbatim the two which are most material to the disposition of the instant case. Section 32-2701 reads:

"For the purpose of the Act (§§32-2701—32-2706) vegetable oleomargarine is hereby defined as any article or compound made in the semblance of butter, manufactured from any vegetable oil, vegetable fat or vegetable wax, or any mixture of them, or of any chemical or physical derivative of any vegetable oil, vegetable fat or vegetable wax, or any mixture of such derivatives with any vegetable oil, vegetable fat or vegetable wax, and containing in the finished product in excess of one percentum of water and less than twenty percentum of any animal fat."

Section 32-2702 prohibits the selling, offering or exposing for sale, any vegetable oleomargarine as defined in the preceding section, "which is colored or flavored in imitation of butter or made to resemble yellow butter in color or flavor by whatever means the color or flavor of the finished product is accomplished."

Section 32-2703 embodies this language:

"It shall be unlawful for any manufacturer, importer,

jobber, firm, association, corporation or person to manufacture, sell or distribute in the state of Wyoming any vegetable oleomargarine as defined in Section 1 (§ 32-2701), of this act unless he shall pay to the commissioner of agriculture a sales tax of ten cents (10c) per pound on all vegetable oleomargarine sold, offered or exposed for sale or distributed in this state and he shall affix to each package of such vegetable oleomargarine a tax stamp to be furnished by said commissioner of agriculture stating that all charges provided for in this section have been paid. Provided, that such tax stamps shall be issued to cover individual pound packages, and shall be sold only in lots of one hundred (100) or multiples of one hundred (100). The money from the sale of such tax stamps shall be forwarded to the commissioner of agriculture and such money shall be paid monthly by the commissioner into the state treasury. All moneys so paid shall be credited to the general fund."

The purport of Section 32-2704 has hereinbefore been given. Section 32-2705 declares that it shall be the duty of the state chemist to make such analysis as may be necessary to enforce the Act. Section 32-2706 provides sundry penalties for violating the provisions of the law.

It is apparent that the tax thus imposed is an excise tax within Judge Cooley's familiar and frequently quoted definition of the term "excises" which appears in his Constitutional Limitations, Vol. 2, 8th Ed. p. 988 and in his text on Taxation, Vol. 1, 4th Ed., p. 127, Section 42 and which are declared to be:

"taxes laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges."

See also Flint vs. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 349, 55 L. Ed. 389 where the above definition is quoted. It will be observed that under Section 32-2703 that the money paid for the purchase of tax

stamps under this law is required to pass into the State Treasury and be credited to the general fund. So the "Oleomargarine Sales Tax" law provides for an excise tax as a revenue producing measure.

Speaking of excise taxes, in Unemployment Compensation Commission of Wyoming vs. Renner and Lester, 59 Wyo. 437, 451, 143 Pac. 2d 181, this was said:

"It is generally held that equality and uniformity in taxation applies only to property, not to excise, taxes. 26 R. C. L. 255. And there can be no doubt that the tax in this case should be construed to be an excise tax. Charles C. Steward Machine Co. v. Davis, 301 U. S. 548, 57 Sup. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293. It has been said that even when a constitution is so worded that it is impossible to avoid the conclusion that the requirement that taxes be equal or uniform was intended to apply to excise taxes, it does not apply to excises in such a way as to require the State to levy such tax on every act, privilege or occupation within the State, or at the same rate. 'The possible subjects of excise are so infinite in number and the measure of taxation with respect to the different acts, privileges and occupations is so divergent that any such requirement is too impractical for serious consideration.' 26 R. C. L. 256. Take, for instance, our own system of taxation. Inheritance taxes range from 2 per cent to 6 per cent, express companies pay 5 per cent, sales taxes are 2 per cent, some insurance companies pay 5 per cent, gasoline taxes are 4 cents per gallon, use taxes are 2 per cent. Reasonable classification is permitted in this field as in others and a large discretion is vested in the legislature. In fact, reasonable classification may be said to be the key to many constitutional questions. That has been the settled constitutional law for many years."

And in State vs. Sherman, 18 Wyo. 169, 176-177, 105 Pac. 299, it may be appropriately recalled that this court has declared that:

"It is well settled that the Fourteenth Amendment to the Federal Constitution does not prohibit a reasonable classification of persons and things for the purpose

of legislation. (Atchison &c. R. Co. v. Matthews, *supra.*) And it is also well settled that such a classification is permissible under the provision in a state constitution forbidding the enactment of local or special laws. (McGarvey v. Swan, 17 Wyo. 120, 96 Pac. 697.) The classification must be reasonable in view of the object sought to be accomplished. The discrimination must rest upon some reasonable ground of difference between the persons or things included and those excluded, having regard to the purpose of the legislation, and within the sphere of its operation, the statute must affect all persons similarly situated. The constitutional requirement of uniformity in the case of a general law is complied with if it operates alike upon all persons or property under the same circumstances and conditions.

"Obviously it cannot at all times be easy to determine what is reasonable or unreasonable in the matter of classification. *The rule applies that all reasonable doubts are to be resolved in favor of the validity of the statute, and that the Legislature is presumed to have acted upon a knowledge of the facts, and to have had in view the promotion of the general welfare of the people as a whole; and hence the classification and discrimination involved therein must clearly appear to be unreasonable and therefore arbitrary in order to justify the court in declaring an act assailed on that ground to be void. The Legislature having presumably determined that a difference of conditions exist rendering the legislation proper, the court must be able to say, upon a critical examination of the statute in the light of the object sought to be accomplished, or the evil to be suppressed, that the Legislature could not reasonably have concluded that distinctions existed relating to the purpose and policy of the legislation.*" (Citing cases) (Italics supplied.)

The Supreme Court of the United States in German Alliance Insurance Co. vs. Lewis, 233 U. S. 389, 34 S. Ct. 612, 621, 58 L. Ed. 1011 has also pointed out that:

"A legislative classification may rest on narrow distinctions." This view has been likewise reiterated by this court in Kenosha Auto Corporation vs. City of Cheyenne, 55 Wyo. 298, 312, 100 P. 2d 109.

Emphasizing and supplementing the principles announced in the foregoing citations we additionally find the national court of last resort in the case of Tax Board of Commissioners vs. Jackson, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, saying that:

"The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell's Gap R. R. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 30 S. Ct. 578, 54 L. Ed. 883. *The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, or if any state of facts reasonably can be conceived to sustain it.* Rast v. Van Deman, 240 U. S. 342, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350." (Italics supplied.)

The controlling question in the case at bar as briefed and argued by the parties appears to be whether the Wyoming Legislature could constitutionally make the classification it did in imposing the excise tax aforesaid upon margarine possessing less than twenty per cent of animal fat and more than one per cent of water content as the statute (Section 32-2701 supra) directs. The plaintiff maintains the negative side of this proposition and the defendant the affirmative. We are advised that no federal question is involved.

It is apparent from the decisions cited above that the legislature has a broad discretion in making classifica-

tions for taxation with power to make very narrow distinctions in such matters in order to accomplish its taxation policy. More will be said subsequently in connection with our consideration of the problem presented.

We may now properly review briefly the material evidence presented to the district court on the trial held there.

Two witnesses only testified in the case, vis., the plaintiff who was on the stand a very short time and whose statements may be abstracted thus: He has spent eleven years engaged in the grocery trade in the City of Laramie; he is now selling different brands of margarine; he is familiar with the Wyoming law relative to a sales tax on margarine and has read the law. Quoting verbatim from the record, to the question:

"Q. Well, now, will you state what your practice is in regard to the payment of this tax, and how you have handled the use of the stamps?"

he responded:

"A. There are two types of oleo that come into the state of Wyoming. One is a pure vegetable oleomargarine which the state requires on merchants selling it to place a ten-cent stamp tax on it; and then we have another one which is listed as an animal oleomargarine, which there is no tax payable on it. And we have cases I have run across—and one in particular, one of the biggest packers of margarine uses the same carton, the same name, everything, for both types of margarine. The only difference is at the bottom of one type, it says, 'Animal Fat,' so much per cent; and the other says, 'All Vegetable Fat.' "

Both types of margarine mentioned in the foregoing answer are "listed" as oleomargarine and sold as such. He stated also that he was desirous of selling "this product without a payment of this tax"; that he is

familiar with the penalties the margarine sales tax law imposes upon those who sell margarine "without affixing a stamp to the product which is called or referred to as vegetable oleomargarine" and does not want to subject himself to those penalties. This was all the testimony elicited from this witness on behalf of the plaintiff and there was no cross examination.

It will be observed that this testimony is decidedly vague as to the animal margarine sold by this witness. He says it is "listed" as such a margarine but he says nothing as to who makes this listing or what the percentage is of animal fat in the product he sells.

The other witness for the plaintiff was the vice president of a corporation which manufactures margarine. His testimony was quite elaborate and extended. We shall not undertake to do more than abstract those portions which bear particularly upon the question suggested above as at issue here. He said that the factories and refineries of this corporation are located in Chicago, San Francisco, Dallas, Texas and Bayonne, N. J. His address was given as in New Jersey. He is in charge of all scientific and technical research for the company's margarine product and all quality control activities for all the company's manufacturing operations, thus affording him an intimate knowledge of all details involved in the manufacturing operations. He has been engaged in this kind of work for some twenty-three years. His special qualifications educationally for this work were then recited. He states that he is very familiar with the manufacture and use of margarine and other fat foods; that margarine is used by consumers throughout the world for the same purpose as butter; that the basic ingredient of margarine is fat and in the product there is used vegetable fat or animal fat or a combination of these; that margarine is made primarily by "emulsifying into

eighty parts food fat and twenty parts cultured milk"; that other ingredients are usually incorporated such as table salt, Vitamin A, Vitamin D and soy bean lecithin or some other emulsifying agent; that if the product has one per cent or less of water, it is not and can not be margarine but it would be "shortening" which regularly contains less than one per cent of water.

This witness stated also that originally margarine was made primarily from fats extracted from animal sources; that today most of the margarine is made from vegetable oils exclusively; that the fats used are glycerides of natural fatty acids; that such fats when from plant sources are commonly called "vegetable fats" and when from animals "animal fats". Referring to plaintiff's Exhibit 1, a table of animal fats and oils percentages compared with total fats and oils used in this country in the manufacture of margarine for the fiscal years 1920-1947 both inclusive, the witness said that this table had been prepared under his supervision from official statistics, i. e., the reports of the United States Commissioner of Internal Revenue.

This table discloses that in 1923 the percentage of animal fats and oils employed in margarine manufacture as compared with the total fats and oils used in that product was 47.7 percent and during the years 1924 to 1947 both inclusive the percentages in the successive years of this period were as follows: "45.6%, 42.6%, 38.3%, 37.3%, 31.1%, 27.4%, 24.7%, 19.2%, 17.3%, 14.2%, 15.8%, 12.0%, 7.3%, 7.8%, 5.3%, 7.0%, 7.9% 9.9%, 11.9%, 8.4%, 6.5%, 4.3%, 2.4%,1.6%." The record before us does not disclose how much untaxable margarine is now sold in this state but it would seem a logical inference from the tabulation just quoted that the amount is practically quite small. We understand that no one denies that margarine as a class of food may be taxed and butter left untaxed.

Further testimony of this witness was that margarine is a product of the factory and laboratory, being an exclusively factory-made product; that margarines may be made from all vegetable fats or from all animal fats or from any mixture or any proportion of animal fat; that there are no differences in the culinary uses of margarines made from different fats; that there is no difference in the digestibility of these various food fats and the margarines made from them; that there is no difference in the manufacturing processes of margarine regardless of the kinds of fats used; that:

"By appearance, use, odor or flavor, the consumer really cannot know whether a margarine is made exclusively from vegetable fats or from a combination of, let us say, twenty-five per cent animal fats and the balance vegetable fats; or a consumer cannot know whether the margarine contains twenty-five per cent animal fats and the balance vegetable fats, or fifteen per cent animal fats and the balance vegetable fats. All these margarines are used with equal success by the consumer for all uses to which margarine is normally put.";

that from the nutritive standpoint there is no difference between margarine taxable under the Act aforesaid and margarine not so taxable; that:

"Margarine, today, is generally fortified with a minimum of fifteen thousand caloric units of Vitamin A to the point. These values are obtained by the manufacturer by the addition of these vitamins in the form of fish liver oils.";

that the commissioner of agriculture has issued under said Act regulations requiring each package or carton offered or exposed for sale containing a pound or less of vegetable margarine as defined in Section 32-2701 supra, to bear a sales tax stamp as provided in Section 32-2703 supra and also that such package or carton shall bear:

"in conspicuous printing and as a part of the principal

label, the percentage of Animal Fats present in the product."

On cross examination, the witness said the increased use of vegetable fats in the manufacture of margarine is due to scientific progress, the industry having learned how "to make them more flexible"; that cotton seed oil is used in larger amounts in the manufacture of margarine than any other oil.

The defendant called no witnesses but introduced in evidence certain data showing that in 1945 and 1946 there were 1,043,000 cattle and calves on Wyoming farms and ranches and that of these, 67,000 were milk cows, two years old and over and the court was told without contradiction that this data disclosed also that approximately thirty per cent of this state's population is engaged in farm production.

It may prove of interest to note that at least half a dozen states employ animal fats as a classification, exempting from taxation margarines containing them as well as certain other listed vegetable fats and oils. The law of the State of Georgia discussed and upheld as constitutional in the case of Coy vs. Linder, 183 Ga. 583, 189 S. E. 26, infra, is typical and reads:

"That there is hereby imposed an excise tax of ten cents per pound on all oleomargarine sold, offered or exposed for sale, or exchanged in the State of Georgia, containing any fat and/or oil ingredient other than any of the following fats and/or oils: Oleo oil from cattle, oleo stock from cattle, oleo stearine from cattle, neutral lard from hogs, peanut oil, pecan oils, corn oil, cotton seed oil, soya bean oil or milk fat. Such excise tax shall be in the form of a stamp in such denominations as will best carry out the provisions of the law. Said stamps shall be properly safeguarded as to their manufacture, preservation and distribution and shall be in the charge of the State Department of Agriculture."

The other states as we are advised, having substantially

similar statutes are Kansas, Louisiana, Maine, North Carolina and South Carolina. Minnesota law (1 Minn. Stat. 1945 Section 33.10) imposes a tax of ten cents upon each pound of margarine containing "less than sixty-five per cent of animal fats and oils", the section in its entirety reading:

"There is hereby imposed, levied, and assessed an inspection fee and excise tax of ten cents upon each pound of oleomargarine containing less than 65 per cent of animal fats and oils and upon each pound of oleomargarine containing any fats or oils other than animal fat and oil, milk fat, peanut, cottonseed or corn oil sold, offered or exposed for sale, or given or delivered to a consumer, such fee and tax to be paid to the commissioner prior to any such sale, gift, or delivery. For the purposes of Sections 33.10 to 33.15, any fractional part of a pound contained in a container, package, or carton shall be deemed to be a pound."

Recurring now to the controlling question in the case at bar, as stated above, the following cases are informative and aid its proper disposition in addition to those hereinbefore cited.

In Hammond Packing Co. vs. State of Montana, 233 U. S. 331, 34 S. Ct. 596, 58 L. Ed. 985, the contention was advanced that a license tax of one cent per pound for carrying on the business of selling margarine being considered by the state courts of Montana to be a tax for revenue, it was unjustifiable "to put oleomargarine in a class by itself" and to discriminate, for instance, between it and butter. Rejecting this contention the court said:

"a state may restrict the manufacture of oleomargarine in a way in which it does not hamper that of butter. Capital City Dairy Co. v. Ohio, 183 U. S. 238, 245, 246, 46 L. ed. 171, 175, 176, 22 Sup. Ct. Rep. 120. It even may forbid the manufacture altogether. Powell v. Pennsylvania, 127 U. S. 678, 32 L. ed. 253, 8 Sup. Ct. rep. 992, 1257. It may express and carry out its

policy as well in a revenue as in a police law. Quong Wing v. Kirkendall, 223 U. S. 59, 62, 56 L. ed. 350, 351, 32 Sup. Ct. Rep. 192."

. Of similar import is the case of A. Magnano Co. vs. Hamilton 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109 wherein it was held that a state statute levying an excise tax of fifteen cents per pound on butter substitutes sold by distributors within the state of Washington was not invalid as denying equal protection to the oleomargarine distributor since the differences between butter and oleomargarine were sufficient to justify their separate classification for purposes of taxation; that this statute was not unconstitutional as imposing a tax not levied for public purpose regardless of alleged legislative purpose to aid the dairy industry thereby and that in determining whether a state taxing statute was constitutional, the collateral purposes and motives of the legislature in levying a tax of a character within reach of its lawful power, were matters beyond the scope of judicial inquiry. The same court had previously said, (Quong Wing vs. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350) that "a state does not deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such a way as to favor certain industries or forms of industry."

As illustrative of the narrow distinctions upon which a legislative classification for taxation may be predicated is the case of Ohio Oil Co. vs. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775. There a Louisiana law levied a tax on oil and the tax ranged in six classes from four cents per barrel on oil of twenty-eight degrees Baumé gravity (under which the lighter the oil the higher would be the gravity) and below, to eleven cents per barrel on oil above forty-three degrees Baumé gravity. The specific gravity of the oil was the sole deciding factor whether a certain tax rate would

apply or another rate should be operative. It was urged that the oils of these different classes were treated for the purpose of the tax as being in effect different commodities each of which has its separate tax. Yet in affirming a judgment below, dismissing the bill of complaint, Chief Justice Hughes speaking for the court said in explaining its views on classification for revenue purposes:

"The applicable principles are. familiar. The States have a wide discretion in the imposition of taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to insure revenue and foster their local interests. The States, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The State may tax real and personal property in a different manner. It may grant exemptions. The State is not limited to ad valorem taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use, or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure." (Citing cases).

So in the earlier case before the same court of Alaska Fish Salting & By-Products Co. vs. Smith, 255 U. S. 44, 48, 41 S. Ct. 219, 220, 65 L. Ed. 489, an Alaskan Territorial Statute imposed a tax upon persons manufacturing fertilizer, fish oil and fish meal in

whole or in part from herring fish. It was urged in criticism of the law that the law unreasonably discriminated against the plaintiff, as it levied no tax upon the producers of these commodities from other kinds of fish. Upholding the legislation so far as its constitutional validity was concerned the court announced:

"we are content however to assume for the purposes of decision that, not to speak of other licenses, the questioned Acts do bear more heavily upon the use of herring for oil and fertilizer that they do upon the use of other fish. But there is nothing in the Constitution to hinder that. If Alaska deems it for its welfare to discourage the destruction of herring for manure and to preserve them for food for man or for salmon, and to that end imposes a greater tax upon that part of the plaintiff's industry than upon similar use of other fish or of the offal of salmon, it hardly can be said to be contravening a Constitution that has known protective tariffs for a hundred years. Rast v. Van Deman & Lewis Co., 240 U. S. 342, 357, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455. Even if the tax should destroy a business it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk."

Perhaps the laconic and terse phraseology of Mr. Justice Holmes' dissent in Louisville Gas and Electric Co. vs. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770 where the court divided five to four sums up this matter of classification as well as could be done. He said:

"When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no

mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark."

It may not inappropriately be recalled in connection with this matter too, that we have pointed out in time past as "fundamental principles" of statutory construction when subjected to the test of constitutional limitations:

"That all statutes are presumed to be constitutional and every reasonable doubt will be resolved in favor of their validity, State v. Snyder, 29 Wyo. 163, 212 P. 758; and that no statute will be so construed as to make it unconstitutional if such construction can be avoided, Houghton Bros. v. Yocum, 40 Wyo. 57, 274 P. 10." (Taxpayers' League of Carbon County vs. McPherson, 49 Wyo. 251, 54 Pac. 2d 897, 906).

That is to say:

"Before an act of the Legislature will be declared unconstitutional, the conflict between the act and the fundamental law must be clear and palpable." Cooper v. Rollins, 152 Ga. 588, 590, 110 S. E. 726, 20 A. L. R. 1105.

We now undertake an examination of some of the cases to which our attention has been directed by the parties herein as especially persuasive in their application to the controversy before us.

It is maintained quite urgently on the part of the plaintiff that the case of Thorin vs. Burke, 146 Neb. 94, 18 N. W. 2d 664, should be regarded as especially in point here. We are not inclined to think that this is so. That was a case wherein a Nebraska statute after providing for the imposition of a tax of fifteen cents per pound or fraction thereof "upon all imitation butter" and after defining imitation butter as:

"every edible article, substitute or compound other than that entirely produced from pure milk or cream from the same, made in the semblance of butter, or

containing any oil or fat other than the fatty constituent of cows milk intended or designed to be used as a substitute for butter,"

then continued:

"provided any oleomargarine or imitation butter containing more than 50% of animal fats or animal oils produced in the United States and containing no imported oils or fats, for the purpose of this Act shall not be included in the term imitation butter for tax purposes. * * *"

It was contended by the plaintiff in the action, which was one brought originally in the Supreme Court of the state to obtain a declaratory judgment, that the Act aforesaid constituted an arbitrary classification or a discrimination between margarines without a reasonable basis of distinction. This contention was upheld and the Act declared unconstitutional in its entirety. The testimony in the case was presented by deposition.

The court indicated as the testimony in the case at bar also discloses, that "margarine is entirely a product of the laboratory and factory". It reviewed evidence supplied on behalf of the defendant which explained:

"that with the exception of one or two of the imported oils, the animal fats are characterized by the amount of fatty acid known as palmitic acid, which occurs in the animal fats usually about 20 to 25 per cent, and with the exception of cotton-seed oil and cocoanut oil, does not occur in vegetable oils in anywhere near this amount. Another characteristic fatty acid of animal fats is myristic acid which is present in animal fats usually in the proportion of 5 per cent, and few vegetable oils contain myristic acid."

and that though:

"the color, body, nutritional value and useability of the manufactured products or margarine are the same."

nevertheless:

"there would still remain the chemical differences in composition in the finished product which were present in the raw materials from which the margarine was made."

The court's analysis and consideration of the effect of the Nebraska statute is as follows:

"A margarine containing 51 per cent of animal fats and the balance containing domestic cotton-seed oil, is nontaxable. A margarine containing 51 per cent of animal fats and the balance imported cotton-seed oil is taxable. There is no difference between imported cotton-seed oil and domestic cotton-seed oil. They are identical."

We have no difficulty in reaching the conclusion that under the terms of the Nebraska Act the case was correctly decided. But it is readily seen that the Wyoming law here involved can not be properly thus analyzed. The two enactments are decidedly different. Under our law, if the margarine as a completed product contains less than twenty per cent of any animal fat and in excess of one per cent of water, it is taxable as vegetable margarine. While if it contains twenty per cent or more than twenty per cent of any animal fat, say twenty-one per cent, and also possesses in excess of one per cent of water it is untaxable.

Passing next to the case of Coy vs. Linder, 183 Ga. 583, 189 S. E. 26, a decision especially relied upon by the defendant herein, it will be remembered that the terms of the law as involved in that litigation have been hereinbefore recited. It will be recalled also that the Georgia statute imposes a certain tax upon all margarine "sold, offered, or exposed for sale or exchange" in that state except:

"oleo oil from cattle, oleo stock from catttle, oleo stearine from cattle, neutral lard from hogs, peanut oil, pecan oils, corn oil, cotton-seed oil, soya bean oil or milk fat."

It appeared there that Coy engaged in selling stated brands of margarine, one ingredient in each of which was cocoanut oil, brought suit against Linder, the Commissioner of Agriculture in that state, to enjoin enforcement of the statute quoted as above which imposed a tax on margarine when it was sold or exchanged, and contained ingredients other than those the Act listed. It was asserted on behalf of the plaintiff that the law controvened certain provisions of the Georgia constitution, among which were the due process of law clause, the clause requiring uniform taxation upon the same class of subjects, and the Fourteenth Amendment of the United States Constitution. The chief ground of criticism of the Act was as in the case at bar, that the law set up an arbitrary classification between persons engaged in the sale of products of a similar nature, providing no equal protection of the laws of the said state for property of a similar nature within it by making certain margarine liable for and exempting certain other margarine of a similar nature from said tax. The trial court, however, declined to issue the injunction sought, hence, plaintiff sought review in the highest court of the state.

After a painstaking survey of the utterances of the national and state courts of review concerning what may and may not be done in the matter of classification of items for taxation and indicating that it having appeared:

"that the elements composing the nontaxable oleomargarine were or could be raised in Georgia, and the development of their production would be beneficial to the State,"

the judgment below was affirmed. In aid of this conclusion too, the Supreme Court of Georgia declared that:

"the purposes of the legislation may not be the cor-

rection of some definite evil, but may be only to remove obstacles to a greater public welfare."

It will be observed accordingly that the court—as stated in the syllabus prepared by it for the decision —held that:

"(b) Oleomargarine composed in part of the ingredients mentioned in the second class and in part of cocoanut oil belongs in the first class to which the tax applies.

"(c) The classification for the purpose of imposing excise tax is reasonable."

In other words, margarine manufactured from certain source ingredients could be properly taxed while margarine made from ingredients derived from other sources could not be.

In Schmitt vs. Nord, — S. D. —, 27 N. W. 2d 910, a state statute imposing a tax of ten cents a pound on all margarine as a butter substitute has recently been held valid by the Supreme Court of South Dakota. The action was by Schmitt, who operated a grocery store, as plaintiff against Nord as State Licensing Director for South Dakota for an injunction to restrain the official from enforcing the state law S. D. C. Sections 57.4001, 57.4003. The first two sentences of Section 57.4001 read:

"There is levied and assessed and shall be collected and paid to the State Treasurer a tax of ten cents upon each pound of butter substitute sold in South Dakota to consumers, to be paid prior to or at the time of the sale and delivery to the consumer. Before any package containing such substitute for butter is delivered to the consumer or offered or exposed or kept for sale in open cartons or removed from such cartons, each package shall have securely affixed thereto suitable stamp or stamps denoting the tax thereon."

The first sentence of Section 57.4003 directs the disposition of the tax money obtained pursuant to Section 57.4001 and reads:

"The money received by the State Treasurer from the stamp taxes herein imposed shall be credited by the State Treasurer to the general fund of the state."

The trial court granted the restraint sought. This ruling the appellate court reversed with directions for a judgment to be entered dismissing plaintiff's complaint on the merits. Bearing in mind that in the case at bar the argument for the plaintiff is that vegetable margarine as defined by the statute is insufficiently different from margarine which contains twenty per cent or more than twenty per cent of animal fats to justify separate classification for tax purposes, the reasoning of the Schmitt vs. Nord decision is particularly worthy of consideration here. We excerpt from the opinion in the case as follows:

"Viewing the act as a revenue measure, it was urged that because the differences between butter and oleomargarine are insufficient to justify separate classification, the statutes in operation subject plaintiff to unequal and non-uniform taxation contrary to Article 6, § 17, of the Constitution of South Dakota and the Fourteenth Amendment to the Constitution of the United States. The trial court sustained this contention of the plaintiff.

"The act as a whole indicates that it is aimed at dealers in butter substitutes and reflects an intention to lay an excise tax upon the privilege or occupation of selling butter substitutes to consumers. State ex rel. Botkin v. Welsh, 61 S. D. 593, 251 N. W. 189; In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; State ex rel. Sioux Falls Motor Co. v. Welsh, 65 S. D. 68, 270 N. W. 852; and Barnes v. Stout, 65 S. D. 592, 276 N. W. 920. We so construe it. It is a settled principle, dealing with such occupational or privilege taxes, that if the classification is justified, the cited constitutional provisions are satisfied if equal treatment is accorded all within the class. State ex rel. Botkin v. Welsh, supra. We turn to the matter of classification.

"A short answer to the contention that the classification is not justified seems adequate in view of the undisputed facts and the settled state of the law.

"Plaintiff is engaged in the business of selling oleomargarine which conforms to the standards promulgated as of September 6, 1941, under the Federal Food Drug, and Cosmetic Act of 1938, 21 U. S. C. A. § 301 et seq. Although the product plaintiff sells and butter are both foods and the one is used as a substitute for the other, they are essentially different. The one is the product of the factory while the other stems from the cow and very largely from our great dairy industry. It must be conceded the legislature could reasonably conclude that the costs which go into the butter sold to consumers in our state embrace a substantial contribution to state revenues, while the costs which enter into the production of oleomargarine sold to our consumers include but a very slight contribution to state revenues. Further, it could, we think, reasonably conclude that the fiscal interests of the state would be served by encouraging our dairy industry.

"The test to be applied to the act is the same under both constitutions. Is the classification reasonable, and does it bear some relation to the subject in hand, are the questions to be answered. State ex rel. Botkin v. Welsh, supra. The legislature is clothed with a broad discretion in dealing with the intensely practical problem of providing adequate public revenues. If its ultimate decisions are based on reason, they may rest on very narrow distinctions. The facts stated demonstrate that the classification is valid because founded upon differences related to state revenue. Cf. Great Northern Railway Co. v. Whitfield, 65 S. D. 173, 272 N. W. 787, 111 A. L. R. 1475; and Montgomery Ward & Co. v. Commissioner of Taxation, 216 Minn. 307, 12 N. W. 2d 625. The precise classification has been upheld by the United States Supreme Court. Magnano Co. v. Hamilton, 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109. And see Southwestern Oil Co. v. State of Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; and Ohio Oil Co. v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775."

Applying the reasoning of the Schmitt vs. Nord case to the record before us we may comment that under Sec. 32-2701 supra, although margarine with less than

20% of animal fats and vegetable margarine as therein defined are both foods and one can be readily used instead of the other, they are essentially different in their *original sources*. The vegetable margarine aforesaid is the product of the laboratory and the factory while the other stems in substantial measure from the great cattle or animal industry of which the record demonstrates Wyoming supplies no inconsiderable a part.

Responding now to the crucial query in the instant case, i. e., whether the classification adopted by the legislature of Wyoming in Section 32-2701 supra, for the taxation of vegetable margarine is constitutionally proper, we are constrained in view of the foregoing survey of authorities, to affirm that it is. The statute prescribes two tests, it will be noted, which must be applied in order to determine whether the margarine is subject to the excise tax. As a first test, the finished product must have more than one per cent of water therein to render the article subject to the excise. Plaintiff concedes that this test is a proper one for the record is undisputed that unless the manufactured article contains more than this percentage of water it is not margarine at all but another product entirely, viz. "shortening". The second test is that the finished product in order to be exempted from taxation must have at least twenty per cent of "any animal fat" therein. It is this test at which plaintiff has levelled all his attacks from a constitutional standpoint.

We have seen the classification made by the law "must be reasonable in view of the object sought to be accomplished" and as the Supreme Court of the United States has said, "if any state of facts reasonably can be conceived to sustain it" that should be done. Now the object "sought to be accomplished" is clearly the raising of revenue for the state, as the moneys derived

from the sale of tax stamps by the defendant must be deposited in the general fund of the commonwealth. The record before us shows that in 1931 when the margarine taxing statute in question was passed by the legislature, the percentage of animal fats and oils used in that product by the industry then as compared with the total fats and oils employed at that time, was 19.2%—a fractional per centum less than the twenty per cent embodied in the legislative Act before us. The record also shows that previous to that year, commencing with 1923—and this data was supplied, as hereinbefore noted, by the annual reports of the United States Commissioner of Internal Revenue, the officer charged with the duty of enforcing the federal tax law regarding margarine—the use of animal fats and oils steadily declined in the manufacture of margarine. We think the legislature of this state could reasonably have concluded that as laboratory knowledge advanced and manufacturing skill improved through the coming years, there would be a further reduction in the use of the animal fats and oils in the content of margarine. That quite evidently was the goal towards which the industry was steadily working. It is common knowledge that vegetable fats and oils are as a rule far cheaper in cost than those derived from animal sources. The data supplied in the record at bar and which has been hereinabove set forth demonstrates that this is exactly what has taken place. The percentage of such fats and oils as regards the total fats and oil used in margarine manufacture has declined from 19.2% in 1931 to 1.6% in 1947 as has heretofore been noted. Under such circumstances the effect of the law framed as Sections 32-2701 and 32-2703 supra, would, as the legislature could reasonably infer, be productive of increased revenue for the needs of a growing state as the years passed. Surely that was an extremely laudable and proper objective to be attained.

Another proper objective to be reached from a legislative standpoint by the Oleomargarine Sales Tax Act aforesaid is the distribution of the burden of taxation as equitably as possible. The animal industry in this state including dairying and the farms and ranches which support it, contribute in a large measure through taxation to the support of the state and local government of Wyoming. Indeed as pointed out in the brief of counsel for the defendant, the governor of Wyoming told the joint session of the legislature no later than in the year 1945 through his semi-annual message in performance of his constitutional duty to "communicate" to the law making body "information of the condition of the state" that:

"The greatest industry in the State of Wyoming is agriculture and its kindred activity, the raising of livestock. They pay more taxes, employ more people, and wield the greatest influence on our political, economic, and social life;"

There is no proof in the record here that the laboratories and factories which produce margarine contribute in the least through taxation in aid of the government the citizens of this state maintain not only for the protection of the farm and ranch and the animal industry which they support and their products, but also for the protection of the product of the margarine factory and laboratory when it is shipped into this state, exposed for sale and sold in the ordinary course of business by the stores located here. The legislature could reasonably determine that the margarine industry as it dealt with the people of this state in this fashion should pay, to some extent at least, taxes into the general fund used to support the state government.

So far as the matter of proper classification is concerned the authorities as we read them supply no real reason for striking down the Oleomargarine Sales Tax law as unconstitutional. We have already demon-

strated that the case of Thorin vs. Burke supra, especially urged upon us by the plaintiff, when phraseology of the Nebraska law in question there is carefully analyzed, is hardly in point. More apropos to the case at bar would appear to be the decision in Coy vs. Linder supra, wherein as heretofore discussed, an excise tax on margarine made in part from oils and fats listed by the statute as exempted from such a tax but the remaining part of the product was supplied by cocoanut oil—a taxable oil—was held constitutionally subject to taxation. The Wyoming law as we have noted taxes margarine a part of which is a percentage lower than twenty per cent of animal fats combined with a remaining content composed of vegetable oils both of which component parts are taxable. The Coy vs. Linder case, too, adopts the view of the United States Supreme Court that the equal protection of the laws is afforded notwithstanding a state adjusts its revenue laws and taxing system so as to favor certain industries or forms of industry. (Quong Wing vs. Kirkendall, 223 U. S. 59, 32 S. Ct. 192; 56 L. Ed. 350, supra).

Hardly distinguishable from the facts at bar in point of logical application is the Alaska Fish Salting and By-Products Co. case hereinbefore discussed. There the ultimate product was fertilizer or fish oil. If these were made from herring fish they were taxable but if made from other fish they were not taxable. In the case at bar the margarine is taxable if made with less than twenty per cent animal fats but not taxable if made with that or more than that percentage.

Why may not the legislature reasonably and constitutionally classify for taxation, by having regard to the *intrinsic sources* from which the ingredients which go into a product are drawn, with the underlying idea

of encouraging the use of one and not the other as was done and upheld in the Alaska Fish Etc. Co. and Coy vs. Linder cases? Judge Cooley says:

"Public policy may also warrant a particular classification. For instance, a tax on sugar refiners does not deny the equal protection of the laws because exempting those who refine the products of their own plantations, where the discrimination is obviously intended as an encouragement to agriculture." 1 Cooley on Taxation, p. 719, Section 335 and American Sugar Refining Co. vs. Louisiana, 179 U. S. 89, 95, 21 S. Ct. 54, 45 L. Ed. 102 is cited as supporting this view.

It can not be denied that the sources of the ingredients of margarine selected in Wyoming for the imposition of an excise tax are different. The animal fats as hereinbefore noted, are derived from the great animal industry in contradistinction to the vegetable fats which before they can be used in margarine to make the finished product must be processed through laboratory formulae and factory production. Because the skills of the chemist and the factory worker can so manipulate the vegetable fats when combined with animal fats that no appreciable difference can be detected in the resultant product whether composed largely of animal fats or a combination of such fats with vegetable oils does not hide the fact that the ingredients are obtained from different intrinsic sources, one animal and the other vegetable.

The position of the plaintiff would appear to be that the classification may be based only on the physical properties of the finished product. The authorities which we have reviewed do not appear to support this contention and furthermore, as testified in the Thorin vs. Burke case supra, even from that standpoint, the chemical differences in composition of the finished product which appear in the raw materials from which margarine is compounded will still remain. As a

matter of fact we were told in the argument of the case at bar that a scientifically trained chemist can not upon analysis tell the percentage of animal fat in the completed product, so skillfully are the ingredients blended, but that he could tell that animal fats were present in the resultant compound of margarine. Only the manufacturer, we were assured, could tell the exact ingredient proportions in the margarine produced. The wisdom of the regulation of the Commissioner requiring the package of margarine exposed for sale and sold in this state to carry a declaration of the percentage of animal fat used in order to accomplish the intent of the law is apparent.

It may be suggested that really the question before us from a practical standpoint is one primarily for the legislature to resolve. If the people of this state desire that all margarine shall be taxed and as pointed out above that is the practical effect even now of the present oleomargarine sales tax law as distinguished from butter, that can be done, and the courts in view of the case law as it at present exists will doubtless uphold such legislation.

All things considered and without further extending this opinion it is our conclusion as already intimated that the decision of the District Court of Albany County should be affirmed and an order to that effect will be entered.

*Affirmed.*

KIMBALL, J. and BLUME, concur.