## KENOSHA AUTO TRANSPORT CORPORATION v. CITY OF CHEYENNE

(No. 2128; March 12, 1940; 100 Pac. (2d) 109)

300

For the appellant, there was a brief and an oral argument by *George F. Guy* of Cheyenne.

For the respondent, there was a brief by *H. B. Henderson, Jr.,* and oral arguments by *H. B. Henderson, Jr.* and *John U. Loomis,* both of Cheyenne.

304

· BLUME, Justice.

This is an action brought for the purpose of enjoining the City of Cheyenne of this state from enforcing against the plaintiff its Ordinance No. 530, adopted June 24, 1935, which provides for the regulation and supervision of motor caravans. Section 1 of the ordinance is as follows:

"For the purpose of this Ordinance, a Motor Caravan transporting automobiles through the City of Cheyenne shall be defined as any group of cars or trucks trailing or carrying new or second-hand automobiles to a destination outside of the City of Cheyenne and passing over the streets of said City. A group of cars or trucks is defined as one or more of such vehicles trailing or carrying new or second-hand automobiles destined for points outside of the City of Cheyenne."

Section 2 provides that it shall be unlawful for any caravan as defined in the ordinance to pass over the streets of Cheyenne without first obtaining a permit. The permits are of two classes, and are issued "to cover the expense of regulation, control and supervision of said caravans." One of the permits is one without parking privileges, for which a charge of one dollar

is exacted for each automobile transported through the city. The second class of permits is one with parking privileges, for which a fee of two dollars is exacted for each car which is towed or transported through the city, the permit lasting for the period of twelve hours. No complaint, however, is made with reference to this class, since, it seems, plaintiff does not park in the city. The only complaint herein is as to the fee of one dollar mentioned as above stated. Section 2 of the ordinance further provides that "no permit shall include a charge for the motor vehicle occupied and driven by the manager or other chief officer of the caravan, provided such motor vehicle is his personal property and not being moved through the City of Cheyenne for the purpose of sale." It would, accordingly, seem that the ordinance is directed to towing motor vehicles driven through the City of Cheyenne for the purpose of sale outside of the limits of the city. Section 4 of the ordinance provides that it is enacted for the protection of the public safety and for the protection of the citizens of the City of Cheyenne in the use and enjoyment of its thoroughfares. Section 5 provides that any person or corporation violating the provisions of the ordinance shall be deemed guilty of a misdemeanor and fined not to exceed $100 for each offense.

The amended petition filed herein alleges that plaintiff is a corporation organized under the laws of the State of Wisconsin; that it is engaged in interstate commerce in the highway transportation and delivery of trucks and motor cars; that it delivers such cars to various points in the United States; that it drives many trucks and cars across the highways of the State of Wyoming and through the City of Cheyenne, which is located on one of the main highways east and west; that plaintiff's operations are to be distinguished from the usual caravan operations, since plaintiff does not transport automobiles and trucks by long trains or

caravans; that plaintiff uses three different methods of transporting these cars and trucks, namely, by straight towing, saddle-mount towing, and full-mount towing; that

"under the first or 'straight towing' method, two vehicles are coupled together, the first one doing the towing and the second vehicle being towed; that under the second or saddle-mount method, the front wheels were removed from the vehicle that is being towed and the front end thereof is elevated on and fastened to the rear end of the towing or power unit; that under the third or 'full-mount' method, one smaller vehicle is carried on the power unit as cargo and the third unit is towed by the power unit; that as heretofore alleged the first of these three methods is the only one utilized by the plaintiff in the transportation of automobiles, but that all three methods are utilized in the transportation of trucks; that plaintiff never operates more than two such units in a group and that, therefore, its operations are to be completely distinguished from the usual 'caravan operations,' and plaintiff's operations do not present any extraordinary or unusual policing or traffic problems, either within the limits of the defendant City of Cheyenne or elsewhere."

It is further alleged that for some months prior to June 24, 1935, various firms, persons and corporations were engaged in what is known as caravan operations over the highways of the State of Wyoming and through the City of Cheyenne, and that no fees, taxes or charges were exacted therefor by the City of Cheyenne, but that on June 24, 1935, the City of Cheyenne enacted the ordinance hereinbefore mentioned; that since that time it "has been enforcing in full the provisions of said ordinance against the plaintiff and will, unless restrained by proper order of the court, continue to enforce the provisions of the ordinance against this plaintiff"; that the ordinance is in violation of Section 3 of Article 13 of the Constitution of Wyoming and in violation of the statutes of the state; that the City, under said ordinance, collected $5019 in 1935, $9625

in 1936, and $6652 in 1937; "that the amounts charged and collected under said ordinance are unreasonable and in excess of the actual cost of the administration of said ordinance"; that

"as heretofore alleged, plaintiff's operations are solely operations in interstate commerce and that the tax imposed and collected by the defendant, the city of Cheyenne, is in violation of Section 8 of Article 1 of the Constitution of the United States providing for the regulation of commerce between the states, and that said municipal ordinance is also in contravention and in violation of the 14th amendment to the Constitution of the United States for the reason that it denies to this plaintiff the equal protection of the law and in that the tax so imposed and collected is not imposed or collected under the police powers of the city of Cheyenne, but is imposed and collected purely as a revenue measure; that as such said tax as so imposed and collected is an undue and unreasonable burden upon the plaintiff's operations in interstate commerce and that said ordinance deprives plaintiff of its property without due process of law."

Plaintiff accordingly prays that the ordinance be declared invalid under Section 3 of Article 13 of the Constitution of the State, and in violation of Section 8 of Article 1 of the Constitution of the United States, providing for the regulation of commerce between the states, and in violation of the 14th amendment to the Constitution of the United States, guaranteeing the plaintiff the equal protection of the laws; that the City be enjoined from interfering with plaintiff's operations through the city and from collecting or attempting to collect the fees above mentioned. An amendment to the second petition will be mentioned hereafter. The City filed a demurrer to the amended petition as amended, which was sustained, and, the plaintiff relying to stand on such amended petition, the court entered judgment dismissing it. From that judgment the plaintiff has appealed to this court.

1. It is contended by plaintiff that the city did not, under the constitution and laws of this state, have the power to enact the ordinance in question. There is no merit in this contention. Under section 22-1918, Rev. St. 1931, subd. 24, the City of Cheyenne has been given the power to enact all ordinances, not inconsistent with the laws of the state, for the good government and welfare of the city. We know of no constitutional provision contrary to this statutory authority. Counsel for plaintiff seem to think that section 3 of article 13 of the state constitution forbids the ordinance. That section merely provides that the legislature shall restrict the powers of municipal corporations to levy taxes and assessments and borrow money. The fee provided in the ordinance in question is not a tax, properly speaking, but a fee exacted in the enforcement of a police regulation. The ordinance is specific on that point, providing in section 2 thereof that the permits mentioned in the ordinance are issued "to cover the expense of regulation, control and supervision of said caravans." Whether or not that fee is excessive will be discussed later.

2. It is contended that the ordinance exacting fees is in violation of section 21 of chapter 121 of the Session Laws of 1937. That section provides as follows:

"Operators of a towing motor vehicle as defined in this Act shall, at the time application is made, pay to the Highway Department as a compensatory fee as compensation for the use of the public highways, to compensate for the expense of administering and enforcing this Act and for the maintenance, repair and reconstruction of the highways the sum of six dollars ($6.00) for each and every vehicle driven or towed which fee shall be in lieu of all registration fees and other compensatory fees, provided such driven or towed vehicles are not being used for the transportation of passengers or for the transportation of other property."

Sections 15 to 18 of the same chapter contain further provisions for towing motor vehicles, section 18 providing that "the highway department is vested with the power to promulgate such other reasonable rules and regulations as it may deem necessary to control such towing operations." Under Section 21, supra, the fee is exacted "to compensate for the expense of administering and enforcing this act and for the maintenance, repair and construction of the highways." It is reasonably clear that under these provisions the legislature meant to exact the fee of $6.00 mentioned in section 21 not alone for the maintenance, repair and construction of the highways, but also for all necessary expenses in connection with controlling and supervising the towing vehicles in their passage across the state on public highways, including whatever policing might be necessary. If there were no other provisions governing towing vehicles, the ordinance in question would be inconsistent with those already mentioned. In fact, we think that it is not improbable that the legislature meant to fix a fee for which the vehicles in question should be able to travel from one end of the state to the other. But the term "highway" is defined in section one of the same legislative act as "any road, thoroughfare or way open to the public, as now, or hereafter designated as a Wyoming State Highway by the State Highway commission under the laws of Wyoming." The amended petition herein fails to allege that the street or streets in the city of Cheyenne, used for the operation of plaintiff's vehicles, have been designated as such highways, and until that is done, we are unable to see how we can declare the ordinance in question inconsistent with the provisions of chapter 121, supra.

3. It is claimed that the fees imposed upon the plaintiff are discriminatory in favor of commercial motor

trucks and their trailers. The allegation in that connection is as follows:

"That although this plaintiff is treated in its operations through the City of Cheyenne as a 'Caravan Operator,' and as a 'Towing Operator,' that in truth and in fact and to all practical purposes and intents, this plaintiff's operations are no different than those of the usual commercial truck operator; that when plaintiff is utilizing its first method of operation herein described, its equipment is operated as the ordinary truck and four-wheel trailer; that when plaintiff is utilizing the second and third methods of operation herein described, the said operations are no different than those of the semi-trailer or of the ordinary commercial trucker; that plaintiff's equipment, as so operated on and through the streets of the City of Cheyenne presents no problems of policing, parking, health or public safety any different from or additional to the same problems presented by the operations of commercial motor trucks and their trailers, in and through said municipal corporation; that the operations of commercial truckers in and through said municipal corporations are free of any taxation whatsoever by the defendant, City of Cheyenne, and that there is no practical difference whatsoever between the operations of this plaintiff and such commercial motor truck vehicles, and that the tax imposed by the City ordinance now in question, is, therefore, arbitrary and unfairly discriminatory against the plaintiff in its operations within the corporate limits of the defendant, City of Cheyenne, and that there is no basis or foundation in reason or in fact for attempting to make a distinction between the plaintiff's operations, which are taxed by said ordinance and the operations of the ordinary commercial truckers, which are not taxed by the said ordinance."

It is charged that the discrimination is in violation of the equal protection clause of the 14th amendment to the Constitution of the United States. It is not charged that it violates the corresponding clause of our own constitution, so that we are not called upon to interpret that. And in interpreting the equal protec-

.tion clause of the fourteenth amendment to the constitution of the United States, we must follow, and are bound by the decisions of the Federal Supreme Court. It is true that we have no case decided by that court—or by any other for that matter—which is directly in point. It may be that when such a case comes before the court of highest authority herein, that court, considering the numberless fees which might be exacted by municipalities along the highways of the nation, and after considering and balancing the various economic interests, will put ordinances like that here under consideration to sleep. But we shall not indulge in conjectures, and in the meantime, in the performance of the duty stated above, we shall follow and apply the well settled rules of that court in analogous cases.

It is alleged in the amended petition that "plaintiff never operates more than two units in a group." The allegation is doubly uncertain. Plaintiff had previously set out three types or methods of composite conveyances, also mentioning the term "unit," and referring in connection with one of these types to a "third unit." Hence the foregoing allegation, first above mentioned, cannot refer to these types or methods, but evidently means by "two units in a group," two units, each composed of one of the types or methods of composite conveyances previously mentioned. As so understood, it is still somewhat uncertain. It is not the equivalent of an allegation that at times only one such unit is operated. In view of the fact that plaintiff must show the unconstitutionality of the ordinance so far as it is concerned, we think the allegation should be construed to mean that plaintiff operates two units together. We must, then, determine the validity of the ordinance in question in that light so far as plaintiff is concerned, for it may attack the constitutionality thereof only in so far as it is applied to its disadvantage, and we need only go further and also determine whether the

ordinance is valid if only one unit is operated, instead of a group of two or more. 16 C. J. S. 162. Now, aside from the fact that the ordinance is directed uniformly to operations of one motor vehicle towing another independent motor vehicle, and it does not appear that commercial trucks and their trailers are of that character, it is not alleged that the latter are operated in more than one unit. Hence there is at once apparent a difference between them and the units operated by the plaintiff. A legislative classification may rest on narrow distinctions. German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 621, 58 L. Ed. 1011. Hence for us to hold that the classification is unreasonable, we should be able to say that the difference here under consideration is so slight as not to be noticeable at all. Judging from the ordinance, from the amended petition, and from judicial opinions, it is probable that the legislation in question was brought about by the fact that caravans of motor vehicles for sale traveled through the city, giving the municipal authorities trouble. That the city was authorized to put into a distinct class, and make special regulations for, such caravans which are long appears, we think, from Clark v. Paul Gray, Inc. (U. S.) 59 Sup. Ct. 744, 83 L. Ed. 736, and Morf v. Bigman, 298 U. S. 407, 56 Sup. Ct. 756, 80 L. Ed. 1245. The only question then is how long or short the caravan must be. It is stated in Moore v. Ingels, 14 Fed. Supp. 922, 925, that the term "caravan" has come to mean a "considerable number of persons journeying in company of several or many vehicles." But even so, the term "several" is indefinite. The city had to draw the line somewhere, and had a broad discretion where to draw it. Continental Baking Co. v. Woodring, 286 U. S. 352, 52 Sup. Ct. 595. Mathematical nicety is not required, and that some inequality in practice may result is not fatal. Continental Baking Co. v. Woodring, 55 F. (2d) 347. The line was drawn

so as to include plaintiff's operations, and there seems to be no basis for the argument that only long caravans were intended. It has not been suggested how long the caravan was intended to be, where the city should have drawn the line, or why this court would be better qualified than the city authorities in drawing it. We cannot think, say, under the allegations now before us, that the line was drawn so arbitrarily as to condemn the classification. See Euclid v. Ambler Realty Co., 272 U. S. 365.

Moreover, in accordance with many decisions of the United States Supreme Court, a classification is not to be condemned if it is based upon an evil which is mainly feared and is sought to be prevented. Cooley's Const. Limitations (8th Ed.) p. 813. It is not invalid because of simple inequality. It may depend upon degrees of evil without being arbitrary or unreasonable. International Harvester Co. v. Missouri, 234 U. S. 200, 34 S. Ct. 859, 862, 58 L. Ed. 1276. "It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest * * *. If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, and numerous cases cited; Silver v. Silver, 280 U. S. 117, 50 Sup. Ct. 57, 74 L. Ed. 221; 65 A. L. R. 939. In the case of Patone v. Pennsylvania, 232 U. S. 138, 34 Sup. Ct. 281, 58 L. Ed. 539, the court had under consideration a law forbidding unnaturalized foreign-born residents to kill any wild bird or animal. The Court stated:

"The discrimination undoubtedly presents a more difficult question. But we start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared,

it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have been shown to mark the class. It is not enough to invalidate the law, that others may do the same thing and may go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named * * * The state may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses. * * * The question therefore narrows itself to whether this court can say that the legislature of Pennsylvania was not warranted in assuming as its premises for its law that resident unnaturalized aliens were the peculiar source of the evil that it desired to prevent * * * It is enough that this court has no such knowledge of local conditions as to be able to say that it was manifestly wrong."

It may be that in a case which involves both a burden upon interstate commerce and the question of equality a somewhat more rigid rule would be applied than that applied in the foregoing cases. It is somewhat difficult to see that if the situation and condition in connection with vehicles operated by the plaintiff and others similarly situated is in fact in substance the same as that in connection with commercial trucks and their trailers, a discrimination between them could be upheld. Still, it would seem that under the rule of the foregoing cases, as applied to this case, the mere fact that a discrimination exists in favor of commercial trucks does not condemn the ordinance in question; that it will be presumed that the evil arising from unregulated caravans, such as contemplated by the ordinance, is greater than that arising from unregulated commercial trucks, and that at least the contrary must be made to appear in order to condemn it on the ground of inequality. It is, it would seem, doubtful that that is true in the case at bar. It is true that it is alleged that "plaintiff's equipment, as so operated on and through

the streets of the city of Cheyenne, presents no problems of policing * * * any different from or additional to the same problems presented by the operation of commercial motor trucks and their trailers in and through said municipal corporation." But the facts upon which this allegation is based do not appear. The relative number of commercial trucks and "caravans," the frequency, continuity and extent of the use by either, do not appear, at least with that degree of certainty which would require us to hold the ordinance to be arbitrary. Counsel for plaintiff have attempted to supplement their amended petition by many statements in their brief. But these statements do not supply the lack of allegations in the amended petition. The case at bar presents a much stronger case, we think, than the Patone case from which we have quoted, if we disregard the mere conclusion of the pleader and look only to the ultimate facts alleged in the amended petition. We ought not to be asked to stand upon the street corners of the down-town district of the municipality, and take notice of the fact that the streets are cluttered with commercial vehicles which in number, frequency, continuity and extent of use, equal the vehicles operated by the plaintiff and others similarly situated in the manner contemplated by the ordinance.

4. It is contended that the ordinance, in imposing the fee of $1.00 above mentioned, interferes with interstate commerce. It does not draw a distinction between caravans which come from within or from without the state. But the plaintiff operates only between states, and, we take it, if as a matter of fact the ordinance unduly interferes with its interstate commerce it has the right to complain. If, however, the classification already discussed is not invalid, the city had the right to impose a reasonable burden for the cost of administration of the ordinance notwithstanding interstate commerce. Clark v. Paul Gray, Inc., supra, and cases

cited. And the question accordingly remains, raised by plaintiff, as to whether or not the fee is excessive. Counsel for plaintiff seems to think that the burden to show the contrary is on the city. He relies on the statement contained in Ingels v. Morf, 300 U. S. 290, 57 Sup. Ct. 439, 81 L. Ed......., where the court stated that "to justify the exaction by a state of a money payment burdening interstate commerce it must affirmatively appear that it is demanded as reimbursement for the expense of providing facilities, or of enforcing regulations of the commerce which are within its constitutional powers." It is added, however, that this may appear from the statute itself—or in this case, from the ordinance. It so appears affirmatively from the ordinance in question, for it provides that the permits required thereunder are "issued to cover the expense of regulation, control and supervision of said caravans." When the purpose so appears, and limited though it is to that declared by the ordinance (Ingels v. Morf, supra), the burden shifts to the plaintiff to show the exaction to be excessive. Ingels v. Morf, supra; Clark v. Paul Gray, Inc., supra. The city is not required to compute this cost with mathematical precision. It must appear that the fee is manifestly disproportionate to the services rendered. Clark v. Paul Gray, supra. The burden to show such excessiveness of fees includes a proper allegation in that respect. Plaintiff alleges that "the amounts charged and collected under said ordinance are unreasonable." That is a conclusion of law, and not of fact, as required under our law. Ricketts v. Crewdson, 13 Wyo. 284, 79 Pac. 1042, 81 Pac. 1; Bunten v. Rock Springs Grazing Association, 29 Wyo. 461, 215 Pac. 244; Smallwood v. Jeter, 42 Idaho 169, 244 Pac. 149; Armstrong v. Johnson Storage & Moving Co., 84 Colo. 142, 268 Pac. 978; Michigan Central R. R. v. Carr, 303 Ill. 354, 135 N. E. 881. If the case had gone to trial, it would have been

compelled to go into details and show the actual or approximate cost in accordance with the rule above stated, and it is no hardship to require it to make an allegation of fact which it was required to prove. The allegation of the total amount collected from plaintiff and others does not shed any light on the point before us. Counsel state in their brief that the city employed no extra policemen to supervise the caravans. But we fail to find any allegation to that effect in the amended petition. We are not unmindful of the fact that the city may not unduly interfere with interstate commerce; that we must not overlook the basic theory of national unity (Morf v. Ingels, supra); that the Federal courts have often struck down local regulations destroying that national unity, or which, in effect, merely hampered competition (Morf v. Ingels, supra; Asher v. Ingels, 13 Fed. Supp. 654), yet in order that we may say that a local regulation has this effect, we must have before us a proper case showing that to be the fact.

The judgment of the trial court is accordingly affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.