# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 45

APRIL TERM, A.D. 2022

April 6, 2022

CASEY WILLIAM HARDISON,

Appellant
(Defendant),

v.

S-21-0097

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
Cody M. Jerabek, Jerabek Law, LLC, Cheyenne, Wyoming. Argument by Mr. Jerabek.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Senior Assistant Attorney General. Argument by Mr. Zintak.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

\* Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    After being charged with three counts of delivery of a controlled substance (marijuana) in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) (Wyoming Controlled Substances Act or Act), Casey William Hardison filed a motion to dismiss the charges.  He claimed the Wyoming Controlled Substances Act is unconstitutional—violating his rights to equal protection and substantive due process under the United States and Wyoming Constitutions—by operating in an unequal and disparate manner because tobacco and alcohol are excluded from its application.[1]  The district court denied his motion to dismiss. Mr. Hardison entered a conditional plea of guilty to two counts of delivery of a controlled substance and timely filed this appeal.  We affirm.

## ISSUE

[¶2]    Does the exclusion of "distilled spirits, wine, malt beverages, or tobacco" from the Wyoming Controlled Substances Act violate Mr. Hardison's equal protection rights under the United States and Wyoming Constitutions?

## FACTS

[¶3]    On three occasions between 2017 and 2018, Mr. Hardison sold marijuana to a confidential informant in Teton County.  He was charged with three counts of delivery of a controlled substance (marijuana) in violation of the Wyoming Controlled Substances Act.[2]  Mr. Hardison filed a pro se motion to dismiss the indictment on constitutional grounds which the circuit court denied.  Mr. Hardison was then appointed counsel who filed a second motion to dismiss the indictment in the district court.  On December 14, 2020, Mr. Hardison entered a conditional plea agreement where he pleaded no contest to two counts of marijuana delivery, the remaining counts were dismissed, and he reserved the right to appeal the denial of his constitutional claims.

[¶4]    Following Mr. Hardison's plea, the district court issued its Order Denying Motion to Dismiss.  The district court rejected Mr. Hardison's claims that the Act violated his fundamental right to freedom of thought.  Analyzing the claims under a rational basis test, the district court concluded that "the classification of marijuana as a Schedule 1 substance[] is rationally related to a legitimate state objective."  The court sentenced Mr. Hardison to concurrent sentences of one year in the Teton County Jail followed by three years of probation.

---

[1] On appeal, Mr. Hardison does not argue the Act violates substantive due process.
[2] Mr. Hardison was also charged with two counts of aggravated assault and battery for swerving his car in the direction of two officers as part of a successful escape from arrest following the third delivery in 2018. Mr. Hardison made it to California where he stayed until he waived extradition in 2020.

1

## STANDARD OF REVIEW

[¶5]    All of Mr. Hardison's arguments are premised on his claim that the Wyoming Controlled Substances Act is unconstitutional.  "The question of whether a statute is constitutional is a question of law over which this Court exercises *de novo* review." *Vaughn v. State*, 2017 WY 29, ¶ 7, 391 P.3d 1086, 1091 (Wyo. 2017) (quoting *Kammerer v. State*, 2014 WY 50, ¶ 5, 322 P.3d 827, 830 (Wyo. 2014)).  "Statutes are presumed to be constitutional, and we will resolve any doubt in favor of constitutionality." *Id.* (citing *Kammerer*, ¶ 5, 322 P.3d at 830).  In most cases, the appellant bears the burden of proving the statute is unconstitutional.  Normally, this burden is heavy in that appellant must clearly and exactly show the unconstitutionality beyond any reasonable doubt. *Michael v. Hertzler*, 900 P.2d 1144, 1146 (Wyo. 1995) (quoting *Miller v. City of Laramie*, 880 P.2d 594, 597 (Wyo. 1994)).  "However, 'that rule does not apply where a citizen's fundamental constitutional right, such as free speech, is involved.'"  In that case, "[t]he strong presumptions in favor of constitutionality are inverted, the burden then is on the governmental entity to justify the validity of the [statute], and this Court has a duty to declare legislative enactments invalid if they transgress [a] constitutional provision." *Reiter v. State*, 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo. 2001) (quoting *Michael*, 900 P.2d at 1146 (quoting *Miller*, 880 P.2d at 597)).  As a result, our standard of review as applied to equal protection claims is dependent on whether the interest at stake involves a fundamental right or a suspect class. *Reiter*, ¶ 20, 36 P.3d at 593.

[¶6]    The principles of equal protection analysis are well established. *Greenwalt v. Ram Rest. Corp. of Wyoming*, 2003 WY 77, ¶ 39, 71 P.3d 717, 729–31 (Wyo. 2003).  Claims of unconstitutional classification are analyzed under two levels of scrutiny.  If the class is suspect or if a fundamental right is involved, a strict scrutiny standard is applied which requires a demonstration that the classification is necessary to achieve a compelling state interest. *In re Honeycutt*, 908 P.2d 976, 979 (Wyo. 1995); *Allhusen v. State By & Through Wyoming Mental Health Pros. Licensing Bd.*, 898 P.2d 878, 885 (Wyo. 1995); *Washakie Cnty. Sch. Dist. No. 1 v. Herschler*, 606 P.2d 310, 333 (Wyo. 1980).  If a suspect class or a fundamental right is not involved, a rational relationship test is used to determine if the classification has a rational relationship to a legitimate state interest. *Honeycutt*, 908 P.2d at 979 (citing *Meyer v. Kendig*, 641 P.2d 1235, 1239 (Wyo. 1982)).  "A party attacking the rationality of the legislative classification has the heavy burden of demonstrating the unconstitutionality of a statute beyond a reasonable doubt." *Greenwalt*, ¶ 39, 71 P.3d at 730 (citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993); *Small v. State*, 689 P.2d 420, 426 (Wyo. 1984); *Nehring v. Russell*, 582 P.2d 67, 74 (Wyo. 1978)).

## ANALYSIS

**Fundamental Right**

[¶7]    Before turning to Mr. Hardison's equal protection argument, we address his claim that the Act impinges on a fundamental right invoking strict scrutiny.[3] Mr. Hardison argues that prohibiting "the consumption of a controlled substance illegal[ly] infringes [on] one's fundamental right to freedom of thought," because every "individual has the right to control, alter and effect one's thoughts, emotions, and sensations in a comprehensive sense." In a stretch to include the distribution of an illegal substance in his argument, he asserts "the ability to consume or utilize a controlled substance is directly affected by the legality of one being able to possess *or deliver it*." (Emphasis added.) We clarify at the outset, Mr. Hardison was convicted of "*possession with intent to deliver*" marijuana, not consuming or using marijuana. His argument that he has a fundamental right to distribute marijuana has been soundly rejected by every court to consider it. *See infra* ¶ 22.

[¶8]    Mr. Hardison cites a Seventh Circuit case, *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 765 (7th Cir. 2004) (affirming city's ban of pedophile sexual offender's presence in city parks), in support of his contention that regulation of a controlled substance infringes on his fundamental right to free thought. There, the court stated:

> A government entity no doubt runs afoul of the First Amendment when it punishes an individual for pure thought. The Supreme Court has held that the First Amendment prohibits the government from commanding a citizen to profess or disseminate an ideological message contrary to that citizen's conscience, *see Wooley v. Maynard*, 430 U.S. 705, 713, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633–34, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and from screening certain types of stimuli from flowing to a citizen under the guise of mind control, *see Stanley v. Georgia*, 394 U.S. 557, 565–66, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ("Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds. . . . Whatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts."). Closer to this case, the Court also has indicated that the government cannot regulate mere thought, unaccompanied by conduct. . . .

---

[3] On appeal, Mr. Hardison presents a brief argument that the Act is facially unconstitutional. He did not make this argument below, and we do not consider it here. *Gjertsen v. Haar*, 2015 WY 56, ¶ 15, 347 P.3d 1117, 1123 (Wyo. 2015) ("[I]ssues raised for the first time on appeal generally will not be considered by this court unless they are jurisdictional or issues of such a fundamental nature that they must be considered." (quoting *Byrd v. Mahaffey*, 2003 WY 137, ¶ 10, 78 P.3d 671, 674 (Wyo. 2003))).

The Supreme Court, however, has made it clear that only governmental regulations aimed at *mere* thought, and not thought plus conduct, trigger this principle. That is, regulations aimed at conduct which have only an incidental effect on thought do not violate the First Amendment's freedom of mind mandate. *Id.*; *Osborne v. Ohio*, 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). Limiting First Amendment protection to pure thought is rooted in common-sense. Thought and action are intimately entwined; consequently, all regulation of conduct has some impact, albeit indirect, on thought. . . . The First Amendment's freedom of mind principle does not subject every conduct-focused regulation to First Amendment scrutiny; rather, it only prohibits those regulations aimed at pure thought and thus mind control.

*Doe*, 377 F.3d at 765.

[¶9]    We agree with the Seventh Circuit's analysis. The Wyoming Controlled Substances Act does not regulate pure thought, it regulates controlled substances, and in Mr. Hardison's case, the distribution of a controlled substance. In *Paris Adult Theatre I v. Slaton*, the Supreme Court said, "The fantasies of a drug addict are his own and beyond the reach of government, but government regulation of drug sales is not prohibited by the Constitution." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 67–68, 93 S.Ct. 2628, 2641, 37 L.Ed.2d 446 (1973). Mr. Hardison does not have a fundamental right to distribute drugs. We review his claims under the rational basis test.

**Rational Basis**

[¶10]   The rational basis test requires Mr. Hardison to demonstrate the Act's exclusion of tobacco and alcohol from its provisions is, beyond a reasonable doubt, not related to a legitimate government interest. *Greenwalt*, ¶ 39, 71 P.3d at 730. "The rational basis test does not require that the law 'be in every respect logically consistent with its aims to be constitutional.'" *Vaughn*, ¶ 30, 391 P.3d at 1096 (quoting *United States v. Comstock*, 560 U.S. 126, 151, 130 S.Ct. 1949, 1966, 176 L.Ed.2d 878 (2010) (quoting *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955))). "[I]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.* (quoting *Comstock*, 560 U.S. at 151, 130 S.Ct. at 1966). "In reviewing a constitutionally based challenge to a statute, we presume the statute to be constitutional and any doubt in the matter must be resolved in favor of the statute's constitutionality." *V-1 Oil Co. v. State*, 934 P.2d 740, 742 (Wyo. 1997) (citing *Thomson v. Wyoming In-Stream Flow Comm.*, 651 P.2d 778, 789–90 (Wyo. 1982)).

**Wyoming Controlled Substances Act**

[¶11]  In 1969, President Nixon declared a national "war on drugs" which "culminated in the passage of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1236." *Gonzales v. Raich*, 545 U.S. 1, 10, 125 S.Ct. 2195, 2201, 162 L.Ed.2d 1 (2005).  "The main objectives of the [federal legislation] were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Id.* at 12, 125 S.Ct. at 2203.  Following the Congressional lead, the corresponding Uniform Controlled Substances Act was passed in nearly every state, including Wyoming. *See Dawkins v. State*, 547 A.2d 1041, 1044 n.6 (Md. 1988) (identifying forty-eight states).  "The Wyoming controlled substance statute [is] derived primarily from the federal statute, and we accept federal case law as persuasive authority in our determination of the intent of the Wyoming legislature." *Pool v. State*, 2001 WY 8, ¶ 12, 17 P.3d 1285, 1288 (Wyo. 2001) (citing *Palato v. State*, 988 P.2d 512, 514 (Wyo. 1999); *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo. 1981); *Dorador v. State*, 768 P.2d 1049, 1053–54 (Wyo. 1989)).

[¶12]  The Wyoming Controlled Substances Act classifies "marihuana" as a Schedule I hallucinogenic substance.  The statute Mr. Hardison stands convicted of states in relevant part:

> (a)    Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.  Any person who violates this subsection with respect to:
>
> .    .    .
>
> (ii)    Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;

Wyo. Stat. Ann. § 35-7-1031(a)(ii) (LexisNexis 2021).  The Act defines a "drug" as:

> (A)    Substances recognized as drugs in official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

5

(B)     Substances intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or animals;

(C)     **Substances (other than food) intended to affect the structure or any function of the body of man or animals**; and

(D)     Substances intended for use as a component of any article specified in subparagraph (A), (B), or (C) of this paragraph.  It does not include devices or their components, parts or accessories.

Wyo. Stat. Ann. § 35-7-1002(a)(xi)(A)–(D) (LexisNexis 2021) (emphasis added).  The Act does not identify alcohol or tobacco as a drug.  A separate statute—Wyo. Stat. Ann. § 35-7-1011(e)—governs the authority to add or delete substances to the various schedules set forth in the Wyoming Controlled Substances Act.  The authority to add or delete substances "does not extend to distilled spirits, wine, malt beverages, or tobacco."  Wyo. Stat. Ann. § 35-7-1011(e).

[¶13]  Mr. Hardison argues that alcohol and tobacco are identical in their effects on the human system as the other drugs included in the Schedule I classification; "[a]ll . . . are dangerous, intoxicating, [and can be] addictive."  He points out that the Wyoming regulation of alcohol and tobacco in other statutes is an implicit recognition that these substances are drugs.  He concludes that, because the properties of tobacco and alcohol comply with the definition of "drugs" in the Act, there is no legitimate government interest in treating these substances, or the people who market them, differently.  Mr. Hardison contends that the Act is unconstitutional because its exclusion of alcohol and tobacco as controlled substances is without a rational basis and violates the equal protection provisions of both the United States and Wyoming Constitutions.

**Equal Protection**

[¶14]  The provisions of the Fourteenth Amendment to the United States Constitution and Wyo. Const. art. 1, §§ 2, 7, 34 and 36 essentially provide that one is entitled to equal protection under the law.  In effect, "all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed." *Reiter*, ¶ 26, 36 P.3d at 594 (quoting *Allhusen*, 898 P.2d at 884).  The Fourteenth Amendment to the United States Constitution provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  State constitutions vary, and "[m]ost . . . do not contain an 'equal protection' clause . . . [b]ut . . . do contain a variety of equality provisions."  Robert F. Williams, *Equality Guarantees in State Constitutional Law*, 63 Tex. L. Rev. 1195, 1196 (1985).  The Wyoming Constitution does not contain an

express "equal protection" clause, but incorporates a number of equality provisions, viz., article 1, §§ 2, 3, and 34; and article 3, § 27. Despite the difference in text between the federal equal protection clause and the equality provisions in most state constitutions, "[m]ost state courts use conventional federal equal protection analysis when interpreting the various equality provisions of their state constitutions." Williams, *supra*, at 1222. The foundational principles of rational-basis review in federal equal protection analysis are not significantly different from "those used in this Court's equal protection analysis from the early days of statehood to the present." *Greenwalt*, ¶ 39, 71 P.3d at 730–31.

[¶15] The bedrock principles of equal protection were set forth in *Greenwalt*:

> 1. The federal equal protection clause and the Wyoming equality provisions "have the same aim in view." *Washakie Cty. Sch. Dist. No. 1 v. Herschler*, 606 P.2d 310, 332 (Wyo. 1980); *Nehring v. Russell*, 582 P.2d 67, 76 (Wyo. 1978); *Pirie v. Kamps*, 68 Wyo. 83, 94, 229 P.2d 927, 930–31 (1951); *In Re Gillette Daily Journal*, 44 Wyo. 226, 239, 11 P.2d 265, 269 (1932); 68 Wyo. 83, 229 P.2d 927, 26 A.L.R.2d 647.
>
> 2. A classification in a statute, such as [the Controlled Substances Act], comes to the reviewing court bearing a strong presumption of validity. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314, 113 S.Ct. 2096, 2101–02, 124 L.Ed. 211 (1993); *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1580 (10th Cir. 1995); *Painter v. Abels*, 998 P.2d 931, 939 (Wyo. 2000); *Hoem v. State*, 756 P.2d 780, 782 (Wyo. 1988); *State v. Langley*, 53 Wyo. 332, 345, 84 P.2d 767, 771 (1938).
>
> 3. A party attacking the rationality of the legislative classification has the heavy burden of demonstrating the unconstitutionality of a statute beyond a reasonable doubt. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 315, 113 S.Ct. at 2102; *Small v. State*, 689 P.2d 420, 426 (Wyo. 1984); *Nehring*, 582 P.2d at 74.
>
> 4. Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices and line-drawing. In areas of social policy, a statutory classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 315, 113

S.Ct. at 2102; *Clajon Prod. Corp.*, 70 F.3d at 1580; *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1355 (Wyo. 1978); [*State v.*] *Sherman*, 18 Wyo. [169,] 177, 105 P. [299,] 300 [(1909)]; *McGarvey v. Swan*, 17 Wyo. 120, 139, 96 P. 697, 702 (1908).

5. The reviewing court never requires a legislature to articulate its reasons for enacting a statute; therefore, it is entirely irrelevant for equal protection purposes whether the conceived reason for the challenged distinction actually motivated the legislature. The absence of "legislative facts" explaining the distinction on the record has no significance in rational-basis review. In other words, a legislative choice is not subject to courtroom fact-finding and need not be based upon evidence or empirical data. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 315, 113 S.Ct. at 2102; *Clajon Prod. Corp.*, 70 F.3d at 1580.

To ascribe a purpose or purposes to the statutory classification, "the court may properly consider not only the language of the statute but also general public knowledge about the evil sought to be remedied, prior law, accompanying legislation, enacted statements of purpose, formal public announcements, and internal legislative history. If an objective can confidently be inferred from the provisions of the statute itself, recourse to internal legislative history and other ancillary materials is unnecessary." *Developments in the Law—Equal Protection*, 82 Harv. L. Rev. at 1077. "The court is expected to safeguard constitutional values while at the same time maintaining proper respect for the legislature as a coordinate branch of government." *Id.* at 1078.

6. These restraints on judicial review have added force where the legislature must necessarily engage in a process of line-drawing. Defining the class of persons subject to a regulatory requirement inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration. Such scope-of-coverage provisions are unavoidable components of most social legislation. The necessity of drawing lines renders the precise

coordinates of the resulting legislative judgment virtually unreviewable because the legislature must be allowed leeway to approach a perceived mischief incrementally. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 315–16, 113 S.Ct. at 2102; *see also Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *Clajon Prod. Corp.*, 70 F.3d at 1581; *Garton v. State*, 910 P.2d 1348, 1355 (Wyo. 1996); *White v. State*, 784 P.2d 1313, 1315–16 (Wyo. 1989); *Troyer v. State*, 722 P.2d 158, 165 (Wyo. 1986); *Galesburg Const. Co. v. Bd. of Trustees of Mem. Hosp. of Converse Cty.*, 641 P.2d 745, 750 (Wyo. 1982) (citing *Denny v. Stevens*, 52 Wyo. 253, 75 P.2d 378 (1938)); *Kenosha Auto Transport Corp. v. City of Cheyenne*, 55 Wyo. 298, 312–13, 100 P.2d 109, 114 (1940); *Trent v. Union Pacific*, 68 Wyo. 146, 162–63, 231 P.2d 180, 185 (1951), *overruled on other grounds*, *Bowers v. Wyo. State Treasurer*, 593 P.2d 182 (Wyo. 1979); *In Re Gillette Daily Journal*, 44 Wyo. at 242, 11 P.2d at 269–70.

7. The rational-basis test is "not a toothless one." It allows the court to probe to determine if the constitutional requirement of some rationality in the nature of the class singled out has been met. *Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981); *James v. Strange*, 407 U.S. 128, 140, 92 S.Ct. 2027, 2034, 32 L.Ed.2d 600 (1972); *Johnson v. State Hearing Examiner's Office*, 838 P.2d 158, 172 (Wyo. 1992); *Ludwig v. Harston*, 65 Wyo. 134, 169, 197 P.2d 252, 267 (1948).

8. Equal protection permits a state a wide scope of discretion in enacting laws which affect some groups of citizens differently than others; it does not prevent a reasonable classification of the objects of legislation. The question in each case is whether the classification is reasonable in view of the object sought to be accomplished by the legislature. All reasonable doubts are to be resolved in favor of the validity of the statute. The legislature is presumed to have acted upon a knowledge of the facts and to have had in view the promotion of the general welfare of the people as a whole. The legislature having presumably determined that a difference of conditions exists rendering the legislation proper, the court must be able to say, upon a critical examination of the statute in the light of the object sought to be accomplished, or the evil to be suppressed, that the legislature could not reasonably have

9

concluded that distinctions existed relating to the purpose and policy of the legislation. *Sherman*, 18 Wyo. at 177, 105 P. at 300; *see also F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 313–16, 113 S.Ct. at 2101–02; *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *WW Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo. 1998); *Nehring*, 582 P.2d at 78.

*Greenwalt*, ¶ 39, 71 P.3d at 730–31.

[¶16] The principles laid out in *Greenwalt* underlie the multi-part test we apply when considering whether a governmental law violates equal protection guarantees. We:

> 1. Identify the legislative classification at issue;
>
> 2. Identify the legislative objectives;
>
> 3. Determine whether the legislative classification is rationally related to the achievement of an appropriate legislative purpose. In this element the court is evaluating whether the legislature's objectives justify the statutory classification.

*Greenwalt*, ¶ 40, 71 P.3d at 732; *see generally Allhusen*, 898 P.2d at 885–86; *Johnson v. State Hearing Examiner's Off.*, 838 P.2d 158, 166–67 (Wyo. 1992).

[¶17] Addressing the classification at issue, we turn first to Mr. Hardison's argument that the Act "unnaturally" severs drugs as defined in Wyo. Stat. Ann. § 35-7-1002(a)(xi)(C) into two classes: (1) tobacco and alcohol, and (2) drugs included in the Wyoming Controlled Substances Act's criminal prohibitions when both classes fall within the definition of substances to be controlled within the Act. Equal protection, however, applies to classes of "things" or "objects" only in the context of individual rights associated with those things. The class at issue here, then, is persons who market, deliver, or distribute the Schedule I items prohibited in the Act, and those who market, deliver, or distribute alcohol and tobacco.

[¶18] Mr. Hardison must first demonstrate that persons who market Schedule I substances and persons who market alcohol and tobacco, are similarly situated. "[T]he Equal Protection Clause 'does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Reiter*, ¶ 26, 36 P.3d at 594 (quoting *Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942) (quoting *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940))). Neither party argues the class is not similarly situated. Even if we assume,

without deciding, that Mr. Hardison has accurately identified a classification through which similarly situated persons are treated unequally, the remainder of his argument is unpersuasive.

[¶19]   Turning to legislative objectives, Mr. Hardison maintains the Act violates equal protection because the legislature did not explain why it severed tobacco or alcohol from its provisions.  The Act's silence as to legislative intent and its noninclusion of reasons is of no consequence.  This Court does not require the legislature to articulate its reasons for enacting a statute.  *Greenwalt*, ¶ 39, 71 P.3d at 730–31.  "If an objective can confidently be inferred from the provisions of the statute itself, recourse to internal legislative history and other ancillary materials is unnecessary."  *Id.*

[¶20]   The intent of the federal Controlled Substances Act and its state counterparts is summarized *infra* and has been addressed by many courts across the nation.  We have stated that "[t]he purpose of the legislation was aimed at the illegal dispensing of controlled substances."  *Cronin v. State*, 678 P.2d 370, 372 (Wyo. 1984); *see also* 28 C.J.S. *Drugs and Narcotics* § 210, Westlaw (database updated March 2022) (The Controlled Substances Act's "central objectives are to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances."); *People v. Mata*, 226 Cal. Rptr. 150, 153 (Ct. App. 1986) ("[T]he purpose of the Uniform Controlled Substances Act . . .'unequivocally manifests a legislative intent to restrict the transportation, sale and possession of controlled substances so as to protect the health and safety of all persons within this state.'").  The plain objective of the Act is to protect the health and safety of all persons within Wyoming by restricting the transportation, sale, and possession of controlled substances.

[¶21]   Finally, we examine whether the classification is rationally related to the legislative purpose.  Mr. Hardison does not argue that the State cannot regulate the delivery of controlled substances.  Instead, he maintains that tobacco and alcohol cannot be rationally removed from a statute imposing the regulation.  A substance is listed in Schedule I if it has (1) a high potential for abuse, (2) no currently accepted medical use in treatment in the United States, and (3) no accepted safety for use in treatment under medical supervision.  Wyo. Stat. Ann. § 35-7-1011.  Mr. Hardison asserts that both alcohol and tobacco fall within the Act's definition of drugs, and there is no rational reason to single them out for different treatment.

[¶22]   Although this is the first time we have considered this issue, the argument is not new.  In every case we can find, Mr. Hardison's theories have been rejected.  The reasoning set forth in *Nat'l Org. for Reform of Marijuana L. (NORML) v. Bell* is instructive:

> "Underinclusive classifications do not include all who
> are similarly situated with respect to a rule, and thereby burden
> less than would be logical to achieve the intended government
> end."  L. Tribe, American Constitutional Law, §16-4, at 997

11

(1978). To be successful in a challenge based on underinclusiveness, plaintiff must show that the governmental choice is "'clearly wrong, a display of arbitrary power, not an exercise of judgment,'" *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) (quoting *Helvering v. Davis*, 301 U.S. 619, 640, 57 S.Ct. 904, 908, 81 L.Ed. 1307 (1937)). Few challengers can sustain such a heavy burden of proof. Courts have recognized the very real difficulties under which legislatures operate, difficulties that arise due to the nature of the legislative process and the society that legislation attempts to reshape. As Professor Tribe has explained: "underinclusive" or "piecemeal legislation is a pragmatic means of effecting needed reforms, where a demand for completeness may lead to total paralysis . . . ." L. Tribe, *supra* § 16-4, at 997.

Legislatures have wide discretion in attacking social ills. "A State may 'direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed.'" *Hughes v. Superior Court*, 339 U.S. 460, 468, 70 S.Ct. 718, 723, 94 L.Ed. 985 (1950) (quoting *Central Lumber Co. v. South Dakota*, 226 U.S. 157, 160, 33 S.Ct. 66, 67, 57 L.Ed. 164 (1912)). Failure to address a certain problem in an otherwise comprehensive legislative scheme is not fatal to the legislative plan.

.　　.　　.

Given this policy of legislative freedom in confronting social problems, the exclusion of alcohol and tobacco from the [Controlled Substances Act] does not render the scheme unconstitutional. Different legislative schemes control the sale and distribution of alcohol and tobacco, [(citation omitted)]. The specific exemption of alcohol and tobacco from the provisions of the [Controlled Substances Act], 21 U.S.C. § 802(6) (1976), reflects Congress's view that other regulatory schemes are more appropriate for alcohol and tobacco. That alcohol and tobacco may have adverse effects on health does not mean the [Controlled Substances Act] is the only proper means of regulating these drugs, nor does it mean that marijuana should be treated identically.

*Nat'l Org. for Reform of Marijuana L. (NORML) v. Bell*, 488 F. Supp. 123, 137–38 (D.D.C. 1980); *see also State v. Mitchell*, 563 S.W.2d 18, 25 (Mo. 1978) ("As to alcohol and tobacco, the legislature's decision to prohibit some harmful substances does not thereby constitutionally compel it to regulate or prohibit all harmful substances."); *United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) ("It is for Congress to weigh the conflicting considerations and determine the necessity and appropriateness of prohibiting trafficking in a dangerous substance, and it may conclude that prohibition of the trafficking in one such substance is appropriate though trafficking in another is left untouched."); *Nat'l Org. for Reform of Marijuana L. v. Gain*, 161 Cal. Rptr. 181, 184 (Ct. App. 1979) ("The mere fact that the Legislature has chosen to prohibit one dangerous product such as marijuana, does not compel it to regulate or prohibit all such substances."); *United States v. Maiden*, 355 F. Supp. 743, 747–48 (D. Conn. 1973) (Congress not required to take an all or nothing approach to drug regulation); *State v. Lite*, 592 So. 2d 1202, 1204 (Fla. Dist. Ct. App. 1992), *approved*, 617 So. 2d 1058 (Fla. 1993) ("[E]qual protection is not violated where a permissible classification includes one, but not others who might have been included in the broader classifications, as long as those within the legally formed class are accorded equal treatment under the law creating the classification.").

[¶23]  We agree with these courts who, having considered essentially the same arguments presented by Mr. Hardison, rejected them.  The Wyoming Controlled Substances Act is rationally related to its objectives, and its failure to include "distilled spirits, wine, malt beverages, or tobacco" does not deny Mr. Hardison equal protection of the law under the United States Constitution.[4]

## *CONCLUSION*

[¶24]  The regulation of the substances contained in the Act, as well as the severing of alcohol and tobacco from its governance, was reasonably related to the legitimate interests of the State and does not violate Mr. Hardison's constitutional right to equal protection. Affirmed.

---

[4] At oral argument, Mr. Hardison raised the substantive due process element of the Fourteenth Amendment as a basis for the unconstitutionality of the Act.  He made no such argument in his appellate brief.  Given that he declined to brief this issue to this Court, we do not address this issue. *See Int. of VS*, 2018 WY 119, ¶ 32, 429 P.3d 14, 23 (Wyo. 2018).  Mr. Hardison also argues the Act violates the equal protection guarantee found in Wyo. Const. art. 1, § 34 which provides "All laws of a general nature shall have a uniform operation" and Wyo. Const. art. 3, § 27 which states, "where a general law can be made applicable no special law shall be enacted."  He points to no specific application of the Wyoming Constitution, cites no pertinent authority, and provides no cogent argument other than his general analysis under the United States Constitution.  We, therefore, do not consider this argument. *Fowles v. Fowles*, 2017 WY 112, ¶ 36, 402 P.3d 405, 414 (Wyo. 2017).